**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

BRENDA GEIGER, ET AL., *

Plaintiffs *

v. * Civil Case No. 8:25-cv-0443-TDC

UNITED WHOLESALE FOOD, ET AL., *

Defendants *

## REPORT AND RECOMMENDATION

This is an action alleging that a restaurant unlawfully used images of several models without their permission. Pending before the Court is Plaintiffs Brenda Geiger, Claudia Sampedro, Jessica Hinton, Lucy Pinder, Camila Davalos, Mariana Davalos, and Ashley Ilene's Motions for Default Judgment against Defendants United Wholesale Food and Ashraf Elberry. ECF Nos. 18, 32. For the reasons discussed below, I recommend that Plaintiffs' Motion for Default Judgment against Defendant United Wholesale Food be granted, in part, and denied, in part, and Plaintiffs' Motion for Default Judgment against Defendant Elberry be denied.

## BACKGROUND

According to Plaintiffs' Amended Complaint, Plaintiffs are professional models that reside throughout the United States and abroad. ECF No. 16, at 3. Defendant Elberry is the owner of a nightclub in Mount Rainier, Maryland, called the Mediterranean Hookah Bar. *Id.* at 1. Defendant United Wholesale Food (hereinafter UWF) operates the same establishment. *Id.* at 2. According to Plaintiffs, Defendants misappropriated Plaintiffs' photos without their permission to make it appear that they are affiliated with the Mediterranean Hookah Bar. *Id.* at 4. Plaintiffs allege that

"the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Mediterranean Hookah Bar." *Id.* at 12.

On February 11, 2025, Plaintiffs brought an action alleging that Defendant UWF's unauthorized use of their photos violated the Lanham Act's prohibitions on false association and false advertising. ECF No. 1, at 12–16. Plaintiffs also alleged separate violations of Maryland and Louisiana statutory and common law. *Id.* at 17–25. As relief, Plaintiffs sought actual and punitive damages, an injunction prohibiting Defendants from using images of Plaintiffs to promote the Mediterranean Hookah Bar, and attorney's fees as authorized under the Lanham Act. *Id.* at 25–26.

On February 12, 2025, a summons was issued as to Defendant UWF. ECF No. 3. On May 14, 2025, Plaintiff returned the summons as executed on Defendant UWF. ECF No. 5. Defendant UWF's response to Plaintiffs' Complaint was due to be filed on or before May 27, 2025. *Id.* Defendant UWF has failed to make an appearance, answer the Complaint, or otherwise take any action in this case.

On July 23, 2025, Plaintiffs moved for a Clerk's Entry of Default against Defendant UWF, ECF No. 7, and the Clerk entered an Order of Default against Defendant UWF. ECF No. 8. Notice of the Clerk's Order, which was mailed to Defendant at a Gaithersburg address, was returned to this Court as undeliverable. ECF No. 10. The Clerk's Office then attempted to send the Notice of Default to a Mount Rainier address, which was also returned as undeliverable. ECF No. 11. On September 16, 2025, the Court granted Plaintiffs leave to file a Motion for Default Judgment. ECF No. 12. On October 7, 2025, Plaintiffs moved for default judgment against Defendant UWF seeking $140,000 in damages. ECF No. 18. Plaintiffs attached to their Motion a Declaration from

Stephen Chamberlin substantiating their request for damages. ECF No. 18-1. According to Mr. Chamberlin, he has worked as an agent for various models for over three decades. *Id.* at 2–3. It "has been [his] job to be intimately familiar with the modeling market, to quote work, negotiate deals and understand the particular factors driving the pricing for the particular work and the Models." *Id.* at 3.

On October 3, 2025, Plaintiffs filed an Amended Complaint, adding Ashraf Elberry as a co-Defendant. ECF No. 16. Plaintiffs proceed with each of their original claims against Defendant UWF, but now also proceed against Defendant Elberry on the grounds that he contributed to Defendant UWF's violations of the Lanham Act. *Id.* at 18–19. On the same day, the Clerk's Office issued a summons as to Defendant Elberry. ECF No. 17. Plaintiffs ultimately served Defendant Elberry on February 3, 2026. ECF No. 24. Defendant Elberry's response was due on February 24, 2026. ECF No. 24. On April 1, 2026, Plaintiffs moved for Clerk's Entry of Default against Defendant Elberry, ECF No. 26, which the Clerk's Office entered five days later. ECF No. 27. On the same day, a Notice of Default was issued to Defendant Elberry. ECF No. 28. Defendant Elberry has failed to make an appearance, answer the Complaint, or otherwise take any action in this case. On May 20, 2026, Plaintiffs moved for Default Judgment against Defendant Elberry on all counts in the Complaint, again seeking $140,000 in damages in total for all Plaintiffs. ECF No. 32. As with the previous Motion for Default Judgment, Plaintiffs attached another declaration from Mr. Chamberlin supporting their calculation of damages. ECF No. 32-1. The declarations are identical. *See* ECF Nos. 18-1, 32-1.

On May 22, 2026, the case was assigned to my Chambers for the limited purpose of a Report and Recommendation on the pending Motions for Default Judgment discussed above. ECF No. 33.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which may be entered by the Clerk of the Court "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear. Fed. R. Civ. P. 55(b)(1). The entry of default judgment is a matter within the discretion of the Court. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421). Default judgment is proper when a defendant is unresponsive. *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896–97 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405–06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pled factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). *See also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)).

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded." *See, e.g.*, *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544–45 (D. Md. 2011); *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *2–3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC 10-2962, 2011 WL 5149832, at *2–3 (D. Md. Oct. 27, 2011). Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations therein are not well-pled and, consistent with the Court's discretion to grant default judgment, relief based on those allegations should be denied. *See, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 544–45 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

## ANALYSIS

### I. Jurisdiction and Venue

This court has jurisdiction over Plaintiffs' claims because Plaintiffs have pled violations of the Lanham Act. 15 U.S.C. § 1125(a)(1). *See also Guerra v. Erick & Edwin, Inc.*, No. TDC-24-03431, 2026 WL 693014 (D. Md. Mar. 10, 2026) (exercising jurisdiction over Plaintiff's Lanham Act claims). Additionally, the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367.

Venue is proper in this judicial district because the Mediterranean Hookah Bar is in Mount Rainier, Maryland, which is in this district. ECF No. 16, at 2–3. *See also* 28 U.S.C. § 1391(b)(2) (stating that venue is proper in "a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated”).

## II. Service of Process

A court cannot grant a motion for default judgment if the defendant did not receive proper service. *Miller Global Properties, LLC v. Green*, No. GHJ-17-1102, 2018 WL 3546724, at *1 (D. Md. July 23, 2018). Federal Rule of Civil Procedure 4(h)(1)(A) authorizes service on the defendant “in the manner prescribed by Rule 4(e)(1) for serving an individual.” Rule (4)(e)(1) authorizes service on individuals in any manner authorized by the State in which the district court sits, or by the State in which the service is to be made. Fed. R. Civ. P. 4(e)(1). Service was effectuated in Maryland as to both Defendants. *See* ECF Nos. 5, 24. Each defendant was either personally served or served through its designated representative. *See* ECF No. 5 (stating that Defendant UWF was served via the individual designated by law to accept service on its behalf); ECF No. 24 (stating that Defendant Elberry was personally served). Both methods comply with Maryland law. *See* Md. R. 2-124(b) (“Service is made upon an individual by serving the individual or an agent authorized by appointment or by law to receive service of process for the individual.”); Md. R. 2-124(d) (“Service is made upon a corporation . . . by serving its resident agent, president, secretary, or treasurer.”).

## III. Liability

For the reasons discussed below, I recommend that the Court find Defendant UWF liable for violations of the Lanham Act and the common law right to privacy, defamation, and unjust enrichment. Although Plaintiffs, in their Motion against Defendant Elberry, proceed on all counts, ECF No. 32, at 5, Plaintiffs’ Amended Complaint alleges that Defendant Elberry only committed contributory trademark infringement. ECF No. 16, at 18–19. When reviewing a Motion for

Default Judgment, the Court may not grant relief broader than that provided for in the operative pleading. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Further, Plaintiffs have failed to plead sufficiently their sole claim against Defendant Elberry. Accordingly, I recommend that the Court deny the Motion for Default Judgment against Defendant Elberry.

**A. Lanham Act False Association and False Advertisement Claims**

Count I of the Complaint alleges a violation of the false association provision in the Lanham Act. The applicable subsections of the statute provide that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*See* 15 U.S.C. § 1125(a)(1)(A).

Count II of the Complaint alleges a violation of the Lanham Act's prohibition on false advertising. The applicable subsections of the statute provide that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> . . .
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall

> be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*See* 15 U.S.C. § 1125(a)(1)(B).

To proceed with a Lanham Act claim under either of the sections above, a plaintiff must advance a claim within the statute's "zone of interests". *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). Additionally, the plaintiff must allege that her damages were "proximately caused by [a defendant's] violations of the [Lanham Act]." *Id.* at 132–33. *See also Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 707 (4th Cir. 2016).

Once Plaintiffs have established that they advance a claim within the statute's zone of interests, they must prove the elements of each claim. To establish a false association claim, the plaintiff must show that:

> (1) the defendant used the plaintiff's word, term, name, symbol, device or any combination thereof in interstate commerce in connection with goods and services; (2) the defendant's use of the plaintiff's word, term, name, symbol, device or any combination thereof was likely to cause confusion, mistake or deception as to the association of the defendant with the plaintiff, or the sponsorship, or approval of defendant's goods and services; and (3) the plaintiff is, or is likely to be, damaged by these acts."

*Davalos v. GGC-Baltimore*, *LLC*, No. 1:24-CV-01733-JRR, 2025 WL 266673, at *5 (D. Md. Jan. 22, 2025) (citing *Ullah v. Linkenauger*, No. 1:20-cv-00634 (AJT/JFA), 2020 WL 9459338, at *3 (E.D. Va. Oct. 2, 2020)).

Plaintiffs have sufficiently alleged an injury within the Lanham Act's zone of interests. Plaintiffs allege that Defendant UWF's unauthorized use of their images damaged their reputations and caused them economic injury. ECF No. 16, at 11–18. Plaintiffs allege that the images came from their own social media pages and Defendant UWF misappropriated and intentionally altered the images before using them, making it appear that Plaintiffs worked for or endorsed the Mediterranean Hookah Bar. *Id.* at 11. This, in turn, deprived them of income. *Id.* The damage

occurred because the Mediterranean Hookah Bar is "engaged in the business of selling alcohol and food in a sexually charged atmosphere." *Id.* Because Plaintiffs are models in a business that places "a high degree of value on their good will [sic] and reputation, which is critical to maximiz[ing] their earning potential, book modeling contracts, and establish each of their individual brands," they did not choose to associate with Defendant. *Id.* at 4. Because Defendant UWF has failed to respond to or otherwise defend this action, I recommend that the Court find that Plaintiffs have alleged a viable false association claim.

To establish a false advertising claim, Plaintiffs must show that:

> (1) the defendant made a false or misleading description of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Guerra*, 2026 WL 693014, at *8.

Plaintiffs have sufficiently alleged that Defendants made a false or misleading representation: their posting of Plaintiffs' images in commercial advertisements for consumers on social media had the tendency to deceive consumers into thinking Plaintiffs endorsed the establishment. ECF No. 16, at 5–10. Additionally, Plaintiffs have alleged that Defendant used Plaintiffs' images in advertisements in interstate commerce. *Id.* Finally, Plaintiffs have alleged that, because of the foregoing, Plaintiffs experienced economic or reputational injury. *Id.*

**B. Contributory Trademark Infringement under the Lanham Act**

The Lanham Act creates liability for any person who:

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

15 U.S.C. § 1114(1)(a). Contributory liability "is triggered if a party (1) intentionally induces another party to violate Section 43(a), or (2) continues to supply its products to someone who that party knows or has reason to know may be engaging in a violation." *Pepaj v. Barcode Corp.*, No. 22-1397 (RDM), 2026 WL 2117294, at *5 (D.D.C. July 22, 2026).

Plaintiffs proceed under the second theory of liability. "A finding of liability under Section 43(a) requires that the defendant knows or has reason to know of the third party's Lanham Act violation." *Id*. Plaintiffs must prove more than "a general knowledge or reason to know that its service is being used" illegally. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010). The defendant must have "some contemporary knowledge" of specific infringements. *Id.*

Plaintiffs' allegations against Defendant Elberry in their Amended Complaint are merely repetitions of the legal elements of the claim. *See* ECF No. 16, at 18 ("Elberry knew, had reason to know and/or was willfully blind in not knowing that United Wholesale Food had violated Plaintiffs' trademark rights and was using Plaintiffs' images in advertising without consent."); *id.* at 19 ("Elberry knew or had reason to know about United Wholesale Food's misuse of each Plaintiff's trademark."). The sole additional allegation is that Defendant Elberry's provision of his premises to Defendant UWF, while knowing it was using these images, facilitated violations of the Lanham Act. *Id.* at 18–19. As another Court recently explained in detail, such barebone allegations are insufficient to create liability for contributory trademark infringement:

> Plaintiffs offer no other factual allegations suggesting that [the contributory infringer] had any reason to discover [the primary Defendant's] violation. Nor is this a case in which the alleged infringement would be so obvious from the face of the

> advertisements: [the contributory infringer] could not intuit that [the primary Defendant's] advertisements contained unlicensed or unlawful depictions of professional models, and Plaintiffs do not allege that [the contributory infringer] was privy to any of [the primary Defendant's] business transactions or licensing agreements. More fundamentally, Plaintiffs do not allege that [the contributory infringer] ever encountered any of [the primary Defendant's] infringing digital advertisements at all. Even assuming that [the contributory infringer], as a landlord, had some responsibility to maintain awareness of [the primary Defendant's] physical advertising on [its] property—and that assumption is highly doubtful—Plaintiffs allege only that the unlawful use of images occurred online on [the primary Defendant's] social media pages and website.

*Pepaj*, 2026 WL 2117294, at *5.

Accordingly, I recommend that the Court decline to impose liability against Defendant Elberry for contributory trademark infringement.

**C. Common Law Right of Privacy**

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.'" *Barnhart v. Paisano Publ'ns, LLC*, 457 F. Supp. 2d 590, 595 (D. Md. 2006) (quoting Restatement (Second) of Torts § 652C (1977)); *see Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 453 (Md. 1984). "An appropriation claim does not arise from incidental uses of a person's identity or likeness." *Guerra*, 2026 WL 693014, at *10 (citing *Barnhart*, 457 F. Supp. 2d at 595). "[T]he value of a person's image is not [always deemed to be] appropriated." *Barnhart*, 457 F. Supp. 2d at 595. In particular:

> when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation.

*Id.* at 595–96 (quoting Restatement (Second) of Torts § 652C (1977)). Instead, the value of one's image is appropriated "when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or likeness that the right of privacy is invaded[.]" *Id.* at 596.

For the same reasons that I recommend that the Court approve Plaintiffs' Lanham Act false advertising claim, I recommend that the Court grant Plaintiffs judgement as to their privacy claim, as well. *See Guerra*, 2026 WL 693014, at *10 (recommending approval of plaintiffs' right to privacy claim under similar circumstances).

**D. Allen Toussaint Legacy Act**

The Allen Toussaint Legacy Act provides, as a matter of Louisiana state law, "[e]very individual has a property right in connection with the use of that individual's identity for commercial purposes." La. Rev. Stat. Ann. § 51:470.3(A). Pursuant to the statute,

> (3) "Commercial purposes" means the use of an individual's identity for any of the following purposes: (a) On or in connection with products, merchandise, goods, services, commercial activities, or performances. (b) For advertising, soliciting, or promoting products, merchandise, goods, services, commercial activities, or performances. (c) For the purpose of fundraising.
> . . .
> (6) "Identity" means an individual's name, voice, signature, photograph, image, likeness, or digital replica.
> (7) "Individual" means a living natural person domiciled in Louisiana or a deceased natural person who was domiciled in Louisiana at the time of the individual's death.

La. Rev. Stat. Ann. § 51:470.2. A defendant violates the statute if they "use[] an individual's identity for a commercial purpose in Louisiana without having first obtained consent from the individual or the individual's authorized representative." La. Rev. Stat. Ann. § 51:470.4(A).

Because Plaintiffs have not alleged a connection between this case and the state of Louisiana, creating liability under the Allen Toussaint Legacy Act, I recommend that the Court decline to find Defendant liable for such.

**E. Maryland Consumer Protection Act**

As this Court has explained "only consumers have standing under the MCPA." *Guerra*, 2026 WL 693014, at *12 (citing *Penn-Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 909 (D. Md. 1997)); *accord Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 597 n.9 (4th Cir. 1992) (noting that the MCPA only provides a cause of action for consumers). A consumer is "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." Md. Code Ann., Com. Law § 13-101(c)(1). To establish liability under § 13-408 of the MCPA, a consumer must additionally allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Guerra*, 2026 WL 693014, at *12 (citing *Steward v. Bierman*, 859 F. Supp. 2d 754, 768–69 (D. Md. 2012)).

Plaintiffs do not allege that they are consumers who relied on Defendant's misrepresentation that in turn caused them actual injury. Accordingly, I recommend that the Court decline to find Defendant UWF liable for a violation of the MCPA.

**F. Defamation**

To establish a viable defamation claim, Plaintiffs must prove four elements: "(1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Guerra*, 2026 WL 693014, at *12 (citing *Offen v. Brenner*, 935 A.2d 719, 723–24 (Md. 2007)).

Plaintiffs allege a viable defamation claim. Plaintiffs allege that Defendant UWF operated "a so-called Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere." ECF No. 16, at 11. Plaintiffs further allege that publication of their images constitutes defamation because the publication "falsely accuses

Plaintiffs of having acted in a manner – i.e., working as an entertainer and/or endorsing Defendant's business which would subject each Plaintiff[] to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff[] of confidence and friendly intercourse in society." *Id.* at 24. Finally, Plaintiffs allege that the images' publication "would tend to injure Plaintiffs in their trade, business, and profession as a professional model." *Id.*

For the reasons stated above, I recommend that the Court find Defendant UWF liable for defamation.

**G. Negligence**

To establish a claim for negligence, Plaintiffs must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *McNack v. State*, 920 A.2d 1097, 1106 (Md. 2007) (citation omitted).

The basis for Plaintiffs' Amended Complaint is that they had no relationship with Defendant UWF. *See, e.g.*, ECF No. 16, at 12 ("At no point was any Plaintiff ever contacted by United Wholesale Food, or any representative of United Wholesale Food, to request the use of any of Plaintiffs' Images."). "Thus, I cannot find that Plaintiffs have well pleaded how Defendant, a stranger to them, owed them a duty of care to implement policies and procedures." *Guerra*, 2026 WL 693014, at *13. *See also* ECF No. 16, at 25. Accordingly, I recommend that the Court decline to find Defendant UWF liable for Plaintiffs' negligence claim.

### H. Unjust Enrichment and Quantum Meruit

"[A] claim for quantum meruit may be based on a contract implied in fact or a contract implied by law, which is often referred to as unjust enrichment." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 598 (D. Md. 2018). There are "two types of quantum meruit claims, one based on an implied-in-fact contract (usually designated as quantum meruit) and the other based on an implied-in-law contract (usually designated as unjust enrichment)." *Sanders v. Mueller*, 133 F. App'x 37, 42 n.3 (4th Cir. 2005). In either circumstance, "a plaintiff, without being requested to do so" must have "render[ed] services under circumstances indicating that [s]he expects to be paid therefore, and defendant, knowing such circumstances, avails himself of [the] benefit of those services." *Cnty. Com'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606 n.6 (Md. 2000) (citation omitted).

Plaintiffs do not allege that they performed modeling services for the Defendant pursuant to an oral, implied-in-fact or implied-in-law contract. Accordingly, I recommend that the Court decline Plaintiffs' request to hold Defendant UWF liable for Plaintiffs' quantum meruit claim.

In contrast, to establish a claim for unjust enrichment, a plaintiff must prove: "(1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Guerra*, 2026 WL 693014, at *14 (citing *Lacks v. Ultragenyx Pharm., Inc.*, 734 F. Supp. 3d 397, 408 (D. Md. 2024)).

Plaintiffs have sufficiently alleged a claim for unjust enrichment. They allege that they conferred a benefit upon Defendant UWF which it was aware of, and that it would be inequitable for it to retain that benefit without payment. ECF No. 16, at 26–27.

## IV. Plaintiffs' Requested Relief

If the complaint alleges facts sufficient for the Court to find liability, then the Court turns to damages. *Walsh v. Yost*, No. 8:20-cv-00449-PX, 2022 WL 9362277, at *2 (D. Md. Oct. 14, 2022). Damages are limited to what is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing, by affidavit, or by other records. *See id. See also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

Plaintiffs, in their Motions for Default Judgment, have requested three forms of relief: 1) a permanent injunction enjoining Defendants from using their images to promote the Mediterranean Hookah Bar; 2) $140,000 in actual damages as their expert affidavit supports; and 3) an unspecified amount of attorney's fees and costs incurred in prosecuting this action.[1] ECF No. 18, at 5; ECF No. 32, at 5.

### A. Permanent Injunction

To obtain a permanent injunction, Plaintiffs must first demonstrate actual success on the merits. *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020). Additionally, the movant must show: "(1) it has suffered an irreparable injury; (2) legal (as opposed to equitable) remedies are inadequate to compensate that injury; (3) an injunction is warranted after considering the balance of hardships between the parties; and (4) the public interest would not be disserved by entry of a permanent injunction." *ClearOne Advantage, LLC v. Kersen*, 756 F. Supp. 3d 30, 39 (D. Md.

---

[1] Plaintiffs' Second Amended Complaint additionally sought punitive and treble damages, but Plaintiffs have not requested such relief in either of the pending Motions for Default Judgment. *Compare* ECF No. 16, at 28 *and* ECF No. 32, at 5.

2024) (quoting *Mayor of Balt.*, 973 F.3d at 274); *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

Plaintiffs have satisfied each of the factors above. As discussed, Plaintiffs have established claims for violations of the Lanham Act's prohibitions on false association and advertisement, the right to privacy, defamation, and unjust enrichment. Additionally, Plaintiffs have alleged, as discussed above, that continued use of their images would cause irreparable harm to their careers on account of the false and defamatory association. Because Defendants have failed to defend this action, there is no basis to conclude that an injunction would impose a hardship on the Defendant or that such an injunction would disserve the public interest. Accordingly, I recommend that the Court award Plaintiffs the permanent injunction requested prohibiting Defendant UWF from using Plaintiffs' images to promote the Mediterranean Hookah Bar.

**B. Actual Damages**

Under the Lanham Act, once a Plaintiff establishes a false association or false advertisement claim, they are entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). As noted, Plaintiffs seek $140,000 in compensatory damages.

In support of their request, Plaintiffs have attached a declaration from Stephen Chamberlin, who "was engaged to evaluate and value retroactively the compensation that each Plaintiff should have received for the use of her images by the Defendant." ECF No. 18-1, at 4. Mr. Chamberlin attests that since 1989, he has represented "hundreds of the world's top models." *Id.* at 2–3. His "key functions include quoting, negotiating, and overseeing rates, work, and career development for all talent represented by the agencies with which [he has] worked on a regular basis[.]" *Id.* He has become "intimately familiar with the model market, to quote work, negotiate deals and

understand the particular factors driving the pricing for the particular work and the [m]odels." *Id.* at 3. His declaration "evaluate[s] and value[s] the compensation [that the Plaintiffs] would have and should have received for the use of [their images] by Mediterranean Hookah Bar." *Id.* at 4. Accordingly, his declaration speaks "to the fair market value of Defendant's use of each Plaintiff's image in promotional, marketing and advertising media, on websites, social media and other forum." *Id*. Mr. Chamberlin "employed the same approach, methodology, and process that [he] would typically employ when determining what to charge a company or other entity that is interested in hiring models [he] represents." *Id.* at 7.

Mr. Chamberlin has laid out his damages methodology in detail. First, he calculated the day rate for each individual model based on a variety of factors. ECF No. 18-1, at 8–9. "Once the Day Rate for each model has been established, the further costs to the Advertiser depends upon the 'Usages'." *Id.* at 9. Finally, his "opinion as to the fair market value takes into consideration the factors normally considered by talent, clients and their respective agents and representatives when negotiating the value of the use of the models' images to promote the clients' goods or services." *Id.* at 13. Additionally, he

> account[ed] for the value inherent in the ability of each Model to control the course and selection of business opportunities and, thus, the direction of their career which, in this case, was taken away by the Defendant. These considerations are always a component of the process by which the parties to a negotiation would determine the value of the use of the Model's image, and so must be considered when establishing fair market value.

*Id*. Taking into consideration all of these factors and calculating the specific harm to each model in an attached computation, Mr. Chamberlin calculated that Plaintiffs had been damaged in the amount of $140,000. *See id.* at 24.

As Defendant has failed to appear and defend this action, I recommend that the Court adopt Mr. Chamberlin's methodology and calculations, awarding damages against Defendant UWF in the amount of $140,000.

**C. Attorney's Fees and Costs**

Finally, Plaintiffs have requested attorney's fees and costs incurred in prosecuting this action. Plaintiffs have presented no information regarding the amount of attorney's fees and costs they have incurred. Accordingly, the Court has no means of determining whether the amounts requested are reasonable, in accordance with the applicable precedent. *See Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 21 (4th Cir. 2019) (per curiam) ("To properly calculate an attorney's fees award, courts undertake a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs."). Although Plaintiffs request that the Court award attorney's fees, subject to a later determination of the appropriate amount, ECF No. 18, at 5, the more prudent approach is to defer consideration until Plaintiffs have provided all the information necessary to complete a thorough evaluation.

Accordingly, I recommend that Plaintiffs' request for attorney's fees and costs be denied, without prejudice. However, I recommend that the Court grant Plaintiff's leave to file a fee petition spelling out the total number of fees and costs sought, including a listing of the hours each attorney spent on the case, how they were spent, why the requested hourly rate is reasonable, the specific amount of costs incurred, and what those costs arose from. The Court may then determine whether the requested fees and costs are reasonable and appropriate.

## CONCLUSION

For the aforementioned reasons, it is recommended that Plaintiffs' Motion for Default Judgment against Defendant UWF, ECF No. 18, be granted in the amount of $140,000 arising out of Plaintiffs' claims for false association and false advertising under the Lanham Act, violations of the right to privacy, defamation and unjust enrichment. Additionally, I recommend that the Court enter a permanent injunction prohibiting Defendant UWF from using Plaintiffs' images to promote the Mediterranean Hookah Bar. I recommend that the Court grant Plaintiffs' leave to file a Petition for Attorney's Fees and Costs with appropriate support and documentation. Finally, I recommend that the Court deny Plaintiffs' Motion for Default Judgment, ECF No. 32, against Defendant Elberry.

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

Date: August 24, 2026

/s/
Ajmel A. Quereshi
U.S. Magistrate Judge